IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST and KAISER FOUNDATION HOSPITALS, | Case No.: 3:25-cv-00085-AN |
| Plaintiffs and Cross-Respondents, v. | OPINION AND ORDER |
| UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 555, | |
| Defendant and Cross-Petitioner. | |

Pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Oregon common law, Kaiser Foundation Health Plan of the Northwest and Kaiser Foundation Hospitals (together "Kaiser") petition the Court to vacate a labor arbitration award in favor of United Food & Commercial Workers, Local 555 ("UFCW"). UFCW, in turn, cross-petitions the Court to confirm the arbitration award under Section 301. Both parties have filed motions for summary judgment, responses in opposition to the other party's motion, and replies in support of their own. Having reviewed the parties' thorough filings, the Court finds that oral argument will not help resolve the parties' cross-motions for summary judgment. *See* Local R. 7-1(d). For the reasons stated below, UFCW's motion for summary judgment is GRANTED, and Kaiser's motion is DENIED.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Materiality is determined with reference to the substantive law and material facts are those which might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

1

## BACKGROUND

The underlying dispute between the parties relates to the compensation of imaging services workers employed by Kaiser and represented by UFCW.  As discussed below, the merits of that dispute are not before the Court.  However, the parties' history of collective bargaining and arbitration are relevant to the parties' motions and are accordingly summarized here.

**A.      Collective Bargaining Background**

The parties entered into the collective bargaining agreement at issue here to cover Imaging Services employees during the term from November 1, 2021, to October 31, 2023.  *See* Decl. of Erik Laiho ("Laiho Decl."), Ex. 1 ("2021 CBA"), ECF 28-1, at 1.  The parties agree that only two contract provisions are relevant.  The first is the CBA's procedural mechanism for resolving grievances:

> ARTICLE 22 – GRIEVANCE PROCEDURE. . .
>
> 22.22 The jurisdiction and authority of the Arbitrator shall be confined exclusively to the application or interpretation of a specific provision or provisions of the Agreement at issue between the parties. The Arbitrator shall not have the right to alter, amend, delete or add to any of the terms of this Agreement. The Arbitrator may consider the entire Agreement in making his/her award. The award of the Arbitrator shall be written and shall be final and binding upon both parties. The expenses and fees of the impartial Arbitrator are to be borne equally by both parties.

*Id.* at 48-51.

The second relevant provision is a substantive Letter of Understanding ("LOU") that was first implemented in 2001 and included in each subsequent CBA since then.  *See* Laiho Decl., Ex. 2, ECF 28-2; Def. Ans. & Cross-Pet., ECF 11, at 10 ¶ 11; Pls. Ans., ECF 14, ¶ 11.[1] The LOU states:

> LETTER OF UNDERSTANDING REGARDING WAGES REVIEW
>
> The Parties agree to jointly participate in a wage survey and/or review commercially available wage data in July 2001 and each year of the Agreement thereafter, which would be considered before implementing the wage and equity adjustments for the year 2001 and subsequent years.

---

[1] Kaiser filed two seemingly identical answers on the same day.  *Compare* Pls. Ans, ECF 13, *with* Pls. Ans., ECF 14.  The Court construes the latter-filed answer, ECF 14, as the operative one.

2021 CBA at 90.  The 2021 CBA, including the LOU, functioned as a local supplement to the 2019 National Agreement ("NCA" or "CNA") between Kaiser and a coalition of unions representing workers at Kaiser. Decl. of Robert Spagat, ECF 33, ¶ 16 & Ex. C.

The parties bargained for a successor agreement, which was ratified by UFCW on April 13, 2024. Decl. of Spencer Hardy, ECF 27, ¶ 3.

**B.    Arbitration Background**

Pursuant to the LOU, UFCW sent Kaiser a written request for a wage survey on April 20, 2022. Laiho Decl., Ex. 7, ECF 28-7, at 1.  After Kaiser failed to conduct a joint wage review and make mid-contract wage adjustments, UFCW submitted a formal grievance seeking a joint review of wage data and corresponding retroactive wage adjustments.  Laiho Decl., Ex. 8, ECF 28-8.  Kaiser denied the grievance and proceeded to arbitration.  Laiho Decl., Ex. 9, ECF 28-9.

The parties conducted an all-day arbitration before arbitrator Jonathan Monat, Ph.D., on April 2, 2024, in which testimony from nine witnesses was heard and thirty-five exhibits were taken into evidence. *See* Decl. of Elizabeth Joffe ("Joffe Decl."), Ex. 4 ("Arb. Tr."), ECF 25-4, at 1-6.[2]  The arbitrator adopted the following statement of the issue proposed by UFCW:

> [1] Did the employer violate the 2021 to 2023 imaging services collective bargaining agreement, including the letter of understanding regarding wages review, in 2022 when it failed to jointly participate in a wage survey and/or review commercially available wage data and implement equity adjustments based on that data? [2] If so, what is the appropriate remedy?

*Id.* 7:14-21.  The parties also agreed on the record that, should the grievance be sustained, the arbitrator "[w]ould retain jurisdiction . . . over the implementation of the remedy."  *Id.* 9:19-24.

Following the arbitration, the parties submitted post-arbitration briefs for the arbitrator's consideration.  *See* Joffe Decl., ECF 25, ¶ 8.  On July 11, 2024, the arbitrator issued his Findings & Award ("F&A").  *See generally* Laiho Decl., Ex. 10, ECF 28-10.  The F&A concludes in relevant part:

> The Union's request for a wage review per the LOU in 2022 was with in its contractual rights. The parties were then required to jointly participate in a wage survey

---

[2] The Court cites to the arbitration transcript's internal pagination in the top-right corner.

and/or review commercially available wage surveys. The Union proposed its extensive survey of local comparator hospital wages that Kaiser refused to consider, insisting upon its own in-house national survey data. Kaiser's refusal to consider the Union's local data, Kaiser violated the LOU. The joint review standard could not be met because Kaiser's position is contrary to the clear language of the LOU. Furthermore, when reviews were conducted in the past, the practice adhered to the LOU. Bargaining history clearly established the meaning and intent of the negotiated LOU. Kaiser's attempt to target median wages instead of top wages violated Kaiser's stated intent as well as disregarding the NCA's principles.

The Union is entitled to a remedy for the Employer's violations of the LOU. The parties are directed to conduct a mid-contract joint review with Union's 2022 local wage survey to determine the top of the market at the time the review would have been completed. Upon completion of this review, Kaiser will make necessary wage and equity adjustments. To the extent Kaiser wages in question in this grievance were below the Portland area market, Kaiser shall adjust affected employees' wage rate to bring them into line with the to the top of the market as of October 2022 for the period ending October 1, 2023. The review must be completed within 90 days. The Arbitrator shall retain jurisdiction for the sole purpose of the remedy.

. . .

AWARD

The grievance is sustained. Kaiser violated the local LOU when it failed to jointly review local wages mid-contract in 2022. The remedy shall be as stated in the last above paragraph. The Arbitrator will retain jurisdiction for the purpose of implementing the remedy.

*Id.* at 10-11.

Following the award, Kaiser sought to use the average Salary Maximum Rate from a Milliman NW Healthcare Survey, which UFCW argued was not in conformity with the F&A's direction to "use the 'Union's 2022 local wage survey to determine the top of the market at the time the review would have been completed.'"  Joffe Decl., Ex. 11, ECF 25-11, at 1 (quoting F&A 10).  To clarify the remedy, the parties returned to the arbitrator, who issued Arbitrator's Findings & Award Remedy on October 14, 2024, which the Court refers to as the First Supplemental F&A.  *See* Laiho Decl., Ex 11 ("1st Supp. F&A"), ECF 28-11.  The First Supplemental F&A held in relevant part:

I ordered the parties to use the Union's survey which met the contractual requirement for comparable local institutions. In contrast, the survey offered by the Employer in 2022 was a national survey that did not meet the contractual requirements. Had the Milliman survey been introduced originally in 2022 when the Union brought in its local survey instead of Kaiser's national internal survey based on median wages, the parties would have been able to come to some agreement then on which surveys to use. It is well after the fact to attempt to use the Milliman survey now. The original order was to compare top rates. There was

4

no directive to use average top rates. The contract language is clear about what surveys to use.

For these reasons, the original remedy stands as ordered.

*Id.* at 2.

The parties continued to disagree regarding implementation of the arbitration award and asked Arbitrator Monat to clarify, among other issues not relevant to this case, whether the remedy required a lump sum payment or whether it required a retroactive adjustment to the affected workers' base pay such that subsequent percentage-based wage adjustments would build off of the new, higher base. On December 30, 2024, the arbitrator issued a Second Supplemental F&A, which held in relevant part:

> The adjustments to the rates were assumed and intended to be to the rate going forward. They were not awarded as lump sum payments. Otherwise, there would be no point in conducting mid-term surveys to assess the top-of-the-market rates for various job classifications. It may be that some or all of the jobs needed rate adjustments. Whatever the findings of the survey, the new rate was to be applied to existing rates from April 20, 2022.
>
> It is nonsensical to set the new wage rates at the top-of-the-market, make a lump sum payment and revert to the old rates. Such an action would defeat the purpose of the top-of-the market policy agreed upon by the parties. Hence, the make whole remedy is to apply the new top-of-the-market rates from the survey going forward with subsequent increases based upon the new rate from October 2022, for each subsequent year. . . .
>
> [M]y award does not limit top-of-the-market rates to end on October 1, 2023. The new top-of-the-market rate becomes the basis for the next year which becomes the basis for the next and so on. The Letter of Understanding Regarding Wages Review makes that intent clear.
>
> Kaiser is ordered to change the affected employees' wage rates to those determined to be [top]-of-market by the wage survey, not merely back pay, such that the new October 1, 2022 rates are to be the status quo from which negotiated rate increases effective October 1, 2023 must be applied. The new status quo of October 1, 2023 rates becomes the basis for which the October 1, 2024 increases are applied, and so on for each subsequent year. In the Union's words, "Use the October 1, 2022 rates as the status quo upon which the negotiated percentage wage increases for October 1, 2023, 2024, and 2025 are based."

Joffe Decl., Ex 16 ("2d Supp. F&A"), ECF 25-16, at 2-3.

## C.    Procedural Background

Kaiser filed its operative complaint on January 23, 2025, asserting claims for vacatur under Section 301 and rescission due to mutual mistake. *See generally* Am. Compl., ECF 7. UFCW timely filed its

answer, including a crossclaim for confirmation of the arbitral award. *See generally* Def. Ans. & Cross-Pet. Kaiser timely answered UFCW's crossclaim. *See generally* Pls. Ans.

The parties filed cross motions for summary judgment on June 23, 2025. *See generally* Def. Mot. for Summ. J. ("UFCW MSJ"), ECF 23; Pls. Mot. for Summ. J. ("Kaiser MSJ"), ECF 26. UFCW's motion asks the Court to enforce Arbitrator Monat's awards and dismiss Kaiser's claim for rescission. Kaiser's motion seeks vacatur of Arbitrator Monat's awards, either in full or in part, but does not request affirmative judgment in its favor on its rescission claim. The parties timely responded in opposition to each other's motions and replied in support of their own. *See generally* UFCW Resp., ECF 30; Kaiser Resp., ECF 31; Kaiser Reply, ECF 36; UFCW Reply, ECF 37.

## DISCUSSION

### A.    Enforcement or Vacatur of Arbitration Awards Under Section 301

Section 301 of the LMRA, codified at 29 U.S.C. § 185(a), authorizes district courts to enforce or vacate a labor arbitration award entered pursuant to a collective bargaining agreement. *Sheet Metal Workers' International Association Local Union No. 359 v. Madison Indus., Inc. of Arizona*, 84 F.3d 1186, 1190 (9th Cir. 1996). However, it is difficult to overstate the level of deference given to labor arbitration awards. *See Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1208 (9th Cir. 1989) (en banc) ("[O]utright 'refusal to review the merits' of arbitrators' awards [i]s normally 'the proper approach' for courts to follow when a disgruntled party [seeks] to challenge them." (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960))). Indeed, "courts reviewing labor arbitration awards afford a 'nearly unparalleled degree of deference' to the arbitrator's decision." *Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016) (quoting *Stead Motors*, 886 F.2d at 1204-05). It has long been blackletter law that district courts "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567-68 (1960). Neither errors of factfinding nor

of contract interpretation are sufficient to disturb an arbitrator's award. *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987).

Instead, the Ninth Circuit has held that district courts must enforce arbitration awards unless one of four narrow circumstances is satisfied:

> (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*S. Cal. Gas Co. v. Utility Workers Union, Local 132*, 265 F.3d 787, 792-93 (9th Cir. 2001). None of these circumstances are satisfied here as to any of the three awards.

1.       *July 11, 2024 Initial Arbitration Award*

The initial F&A focuses on interpreting the LOU language that commits the parties to "jointly participate in a wage survey and/or review commercially available wage date [sic] in July 2001 and each year of the Agreement thereafter, which would be considered before implementing the wage and equity adjustments for the year." F&A 7 (quoting 2021 CBA at 90). To interpret this language, the arbitrator considered bargaining history, past practice and disputes going back to 1991, and the Coalition National Agreement ("CNA") as evidence of the parties' purpose and intent. *Id.* 7-10. Taking those factors into account, the F&A concludes that Kaiser committed to conducting annual wage surveys and making top-of-market wage adjustments as indicated by the survey. *Id.* 10-11. Kaiser advances two arguments against the initial arbitration award. First, Kaiser contends that the F&A is "clearly erroneous" and "does not draw its essence from the [2021] CBA" because the arbitrator's interpretation of the LOU is implausible. Kaiser MSJ 11-12; *see also* Kaiser Resp. 8-9. Second, Kaiser argues that the arbitrator "exceeded his authority by impermissibly interpreting an applying" the CNA in the F&A. Kaiser Resp. 6-7. These arguments misconstrue the arbitrator's award and the standard for this Court's review.

First, Kaiser takes issue with the arbitrator's conclusion that the LOU, as incorporated into the 2021 CBA, requires Kaiser to annually conduct a wage review and implement top-of-market wage adjustments based on that review. Kaiser MSJ 11-12; Kaiser Resp. 8-9. Although the Court acknowledges that the

7

arbitrator's interpretation of the LOU's language is not intuitive, Kaiser's arguments appear to fundamentally misunderstand what it means for an arbitrator's decision to "draw its essence" from the collective bargaining agreement.

"An award draws its essence from the CBA when it is based on language in the CBA." *SFIC Props., Inc. v. International Association of Machinists*, 103 F.3d 923, 925 (9th Cir. 1996). Thus, a court's "task is to determine *whether* the arbitrator interpreted the collective bargaining agreement, *not* whether he did so correctly." *Hawaii Teamsters, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1178 (9th Cir. 2001); *see also Drywall Dynamics*, 823 F.3d at 531-32 ("The question is not . . . whether the arbitrator's interpretation of the agreement was 'plausible,' in the sense of one a court might render, but instead whether he made any interpretation or application of the agreement at all. If so, the court's inquiry ends."). As such, the focus must be on "the procedural soundness of the arbitral decision, not its substantive merit." *Hawaii Teamsters*, 241 F.3d at 1181; *see also Enterprise Wheel*, 363 U.S. at 599 ("[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.")

Here, the arbitrator's award is procedurally sound. The parties agreed that the arbitrator had authority to issue a binding decision. Arb. Tr. 7:2-6. In an all-day hearing, the arbitrator heard testimony from nine witnesses and received thirty-five exhibits into evidence. *Id.* 3-6. Based on that evidence, the arbitrator issued the F&A, which considers the language of the LOU and interprets it in light of bargaining history and past practice. Arbitrators are entitled, even expected, to rely on a wider range of sources than courts typically use, including "'statutes, case decisions, principles of contract law, practices, assumptions, understandings, [and] the common law of the shop,'" to discern the meaning of the CBA. *Hawaii Teamsters*, 241 F.3d at 1184 (quoting *McKinney v. Emery Air Freight Corp.*, 954 F.2d 590, 595 (9th Cir. 1992)). The arbitrator's use of past practice, bargaining history, and the CNA to construe the terms of the LOU is entirely appropriate. Because the arbitrator considered relevant evidence and focused on construing the LOU, as part of the 2021 CBA, the F&A draws its essence from the CBA.

Kaiser's arguments that the interpretation is clearly erroneous or implausible ask this Court to substitute its own interpretation of the 2021 CBA for the arbitrator's. The Court declines to do so. In determining whether the arbitrator's award draws its essence from the CBA, "the quality—that is the degree of substantive validity—of an arbitrator's interpretation is, and always has been, beside the point." *Drywall Dynamics*, 823 F.3d at 532. For that reason, the Ninth Circuit has "retire[d] the use of 'plausibility' as a term to describe the courts' role in reviewing labor arbitration awards." *Id.*; *see also Hawaii Teamsters*, 241 F.3d at 1183 ("[T]he 'plausibility' inquiry does not represent an independent avenue for a merits-based attack on an arbitral award."). As long as an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the fact that "a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38. The Court finds that the arbitrator was not just *arguably* construing the contract, but clearly doing so. Accordingly, there is no basis for the Court to assess whether the F&A is erroneous or implausible.

Second, Kaiser argues that the arbitrator "exceeded his authority" by considering the CNA, an agreement over which Arbitrator Monat lacked jurisdiction. Kaiser Resp. 6-7.[3] Kaiser asserts, and UFCW does not dispute, that the CNA is a separate agreement from the CBA with its own dispute resolution process and a standing arbitrator. *Id.* at 6. As such, Kaiser contends that it was improper for Arbitrator Monat to give it any consideration. But an arbitrator is not "limited to the four corners of the CBA in interpreting its terms" and does not exceed his authority by "also rely[ing] on 'the industrial common law— the practices of the industry and the shop—[which] is equally a part of the collective bargaining agreement although not expressed in it.'" *Virginia Mason Hosp. v. Washington State Nurses Ass'n*, 511 F.3d 908, 915 (9th Cir. 2007) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581-

---

[3] Notably, Kaiser raises this argument in its response in opposition to UFCW's motion for summary judgment and does not cite a single legal authority in support. *See* Kaiser Resp. 3-9. That alone would be a basis to reject this argument. *United States v. Karl*, 264 F. App'x 550, 553 (9th Cir. 2008) ("Failure to cite to valid legal authority waives a claim."); *LaGrand v. Astrue*, No. 08-cv-00363-HA, 2009 WL 10691180, at *5 (D. Or. June 19, 2009) ("[F]ailure to provide authorities for a claimant's argument . . . constitutes a waiver of that argument." (citing *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994))).

82 (1960)) (second alteration in original).  Indeed, "the arbitrator is entitled, and is even expected, to range afield of the actual text of the collective bargaining agreement he interprets."  *Stead Motors*, 886 F.2d at 1206.  Here, the issue submitted to the arbitrator was whether Kaiser "violate[d] the 2021 to 2023 imaging services collective bargaining agreement, including the Letter of Understanding regarding Wages Review." F&A 3.  To answer that question, the arbitrator considered the intent of the parties in negotiating the LOU and looked to the CNA, among other sources, as evidence of that intent.  *Id.* at 7-10.  Doing so was well within his authority and jurisdiction.

2.      *October 14, 2024 First Supplemental F&A*

Kaiser contends that, even if the Court enforces the initial F&A, it should nonetheless vacate the supplemental F&As relating to remedy because the awards exceeded the arbitrator's authority by failing to draw their essence from the CBA. The First Supplemental F&A concludes that the "original remedy [stated in the initial F&A] stands as ordered," only clarifying that the initial F&A's directions to "conduct a mid-contract joint review with Union's 2022 local wage survey to determine the top of the market at the time the review would have been completed" and "adjust affected employees' wage rate to bring them into line with the to the top of the market as of October 2022."  1st Supp. F&A 2-3.  Kaiser argues that the First Supplemental F&A should be vacated for substantially the same reasons that it believes the initial F&A should be vacated.  *See* Kaiser MSJ 16 ("Nor could the Supplemental Award purporting to require Kaiser to adjust the wages of the bargaining unit annually to the "top of the market" draw its essence from the 2021-2023 CBA without that CBA ever providing this (or anywhere using words to the effect of 'top of the market').").  Thus, Kaiser's arguments, they fail for the same reasons they fail in relation to the initial F&A.

3.      *December 30, 2024 Second Supplemental F&A*

Kaiser pursues two arguments against the Second Supplemental F&A.  First, Kaiser argues that the December 30, 2024 Second Supplemental F&A "applied [the arbitrator's] Initial Award to two new issues other than the one the parties submitted to him" and improperly decided:

(1) Whether Kaiser must implement new wages at the top of the market, not merely once from 2022 to 2023 as a consequence failing to implement top of the market wages in the wage survey, but every year going forward.

> (2) Whether Kaiser must increase the wage rates in the 2023-2027 Successor CBA to comply with his Initial Award with respect to the 2021-2023 CBA

Kaiser MSJ 14-15. Second, Kaiser argues that the "Supplemental Award purporting to change the agreed upon wage rates in the 2023-2027 Successor CBA cannot draw its essence from the 2021-2023 CBA." *Id.* 16. Both of Kaiser's arguments fail for the same reason: they either misunderstand or misrepresent the Second Supplemental F&A.

The Second Supplemental F&A does not, as Kaiser contends, "purport[] to change the agreed upon wage rates in the 2023-2027 Successor CBA." Kaiser MSJ 16. Instead, the arbitrator clarified that the wage adjustments directed by the initial F&A "were assumed and intended to be to the rate going forward. They were not awarded as lump sum payments. . . . Hence, the make whole remedy is to apply the new top-of-the-market rates . . . going forward with subsequent increases based upon the new rate from October 2022, for each subsequent year." 2d Supp. F&A 2-3. Drawing on common sense, the arbitrator concluded that the LOU made this the "clear" intention of the parties. *Id.* at 3. This use of common sense, and rejection of Kaiser's interpretation of the initial F&A as "nonsensical" is an appropriate exercise of the arbitrator's authority. It is always the case that an arbitrator should "bring his informed judgment to bear" on the dispute, but it is "especially true when it comes to formulating remedies" because of the need for "flexibility in meeting a wide variety of situations." *Enterprise Wheel*, 363 U.S. at 597; *see also Misco*, 484 U.S. at 38 ("[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect."). Here, the Second Supplemental F&A represents the informed judgment of Arbitrator Monat and is an appropriate exercise of the arbitrator's discretion in fashioning a remedy for Kaiser's breach of the CBA.

Kaiser is correct that Arbitrator Monat lacked authority to interpret the 2023 CBA. But, importantly, the Second Supplemental F&A does not at any point reference, interpret, or apply the 2023 CBA. *See generally* 2d Supp. F&A. Instead, it makes clear that the wage adjustments ordered in the initial F&A are not one-time lump sum payments, but retroactive adjustments to the affected workers' base pay. *Id.* at 2-3. The arbitrator does explain the logical conclusion of this award, namely that these newly revised

11

"rates are to be the status quo from which negotiated rate increases effective October 1, 2023 must be applied. The new status quo of October 1, 2023 rates becomes the basis for which the October 1, 2024 increases are applied, and so on for each subsequent year." *Id.* at 3. The Court does not read this illustration as claiming to interpret or apply the 2023 CBA, which would be beyond the issues submitted to the arbitrator.[4] Instead, in the context of the parties' ongoing dispute, it appears to be a detailed explanation provided to discourage Kaiser from once again trying to avoid its obligations under the 2021 CBA and initial F&A. Going forward, the precise effect of the wage adjustments ordered by Arbitrator Monat's awards will be controlled by the 2023 CBA, but the existence of the 2023 CBA is "simply irrelevant to this case." *Madison Indus.*, 84 F.3d at 1192 (noting that interpretation of a subsequent agreement is no basis to vacate an arbitral decision related to an earlier CBA). However, to the extent that the 2023 CBA references base wages from a prior period (i.e., the term of the 2021 CBA), the Second Supplemental F&A makes clear that those base wages were adjusted by the initial F&A. That clarification draws its essence from the 2021 CBA and is within the issues that were submitted to the arbitrator. Therefore, the Second Supplemental F&A must be enforced.

B.    **Rescission of the 2023-2025 Collective Bargaining Agreement**

Kaiser's complaint seeks, as an alternative to vacating Arbitrator Monat's awards, partial rescission of the 2023 CBA, specifically asking the Court to "rescind[] the wage increases for Imaging employees embodied in the 2023-2027 collective bargaining agreement based on mutual mistake of fact." Am. Compl. 10 ¶ 3. UFCW asks the Court to dismiss Kaiser's rescission claim because it is a state law claim[5] that "requires extensive interpretation and application of the LOU regarding wages under both the 2021–2023 and 2023–2027 CBAs, as well as the wage increases included in the parties' 2023–2027 CBA," and is

---

[4] Like Arbitrator Monat, the Court declines to consider the content of the 2023 CBA, as no dispute regarding its terms is properly before the Court. *Cf. Madison Indus.*, 84 F.3d at 1192 (holding that it was not an abuse of discretion for the district court to decline to consider evidence relating to a new contract in deciding whether to enforce an arbitral award relating to an older contract).

[5] UFCW asserts that it is ambiguous whether Kaiser's rescission claim is brought under state or federal law. The Court sees no such ambiguity. Kaiser's response to UFCW's argument is that its rescission claim is "cognizable under Oregon law," and it cites no federal law of contract rescission. *See* Kaiser Resp. 10-14.

therefore preempted by the LMRA.  UFCW MSJ 27-28 (citing *Dent v. Nat'l Football League*, 902 F.3d 1109, 1116 (9th Cir. 2018)).  Kaiser responds that its claim "rests on extra-contractual issues that do not require interpretation of the Successor CBA."  Kaiser Resp. 10.  The Court agrees with UFCW.

Section 301 of the LMRA completely preempts state law claims enforcing or substantially dependent on a collective bargaining agreement.  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016).  In the Ninth Circuit, courts engage in a two-step analysis known as the "*Burnside* test" when analyzing whether Section 301 preempts a state law claim, *Id.* at 1032-33 (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007)).  Under the first step of the *Burnside* test, courts ask "'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.'"  *Id.* at 1032 (quoting *Burnside*, 491 F.3d at 1059).  If a court determines that the right in question "'exists independently of the CBA,' it moves to the second step, asking whether the right 'is nevertheless substantially dependent on analysis of [the CBA].'"  *Id.* (quoting *Burnside*, 491 F.3d at 1059).  The second step, which is the crux of the analysis here, "turns on 'whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA.'"  *Id.* at 1033 (alteration in original) (quoting *Burnside*, 491 F.3d at 1060).  If the court must do more than merely reference the CBA, then the claim is preempted.  *Id.* (citing *Burnside*, 491 F.3d at 1060).

A Court's analysis of Section 301 preemption begins with the elements of the state law claim.  *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 (1988).  Under Oregon law, justifying rescission by mutual mistake requires establishing that (1) both parties were "'mistaken as to the facts existing at the time of the contract'"; (2) "'the mistake is so fundamental that it frustrates the purpose of the contract,'"; and (3) the adversely affected party does not bear the risk of the mistake.  *Lesher v. Strid*, 165 Or. App. 34, 41, 996 P.2d 988 (2000) (quoting *In re Marriage of Murray*, 120 Or. App. 216, 218–19, 852 P.2d 204 (1993)); *see also Shopping Centers of Am., Inc. v. Standard Growth Props., Inc.*, 265 Or. 405, 422-23, 509 P.2d 1189 (1973) (describing a mistake as "fundamental in character" where it "'relate[s] to the intrinsic nature of the bargain'" (quoting Williston, 13 *Contracts* § 1544, at 94 (3d ed.))).

13

Here, Kaiser argues that its rescission claim is "based on extra-contractual evidence and issues" and that "no interpretation [is] required" of the CBA. Kaiser Resp. 11-12. Kaiser cites, and the Court can locate, no case in which a federal court entertained a state law claim for rescission of a collective bargaining agreement. Nonetheless, Kaiser asserts that "[t]he Ninth Circuit **expressly permits** state-law rescission claims related to a collective bargaining agreement to proceed, and that such claims are not preempted under Section 301 of the Labor Management Relations Act." Kaiser Resp. 10 (emphasis added) (citing *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir. 1991)). This substantially mischaracterizes *Milne Employees Association v. Sun Carriers*, which does not discuss—expressly or otherwise—state-law rescission claims at all.[6] Instead, in *Milne Employees Association*, the Ninth Circuit permits state law claims related to fraud and intentional infliction of emotional distress ("IIED") while finding claims for breach of the implied covenant of good faith and interference with contractual relations to be preempted by the LMRA. 960 F.3d at 1408-13. Importantly, the claims for fraud and IIED were predicated on representations made long after the CBA was signed and "outside the collective bargaining process." *Id.* at 1409. On the other hand, plaintiffs' claims for breach of the implied covenant of good faith and interference with contractual relations and prospective economic advantage were preempted because assessments of reasonableness and outrageousness would require a court to interpret of the CBA. *Id.* at 1411-13.

Kaiser's claim for rescission is substantially more like the preempted claims than the fraud and IIED claims because Kaiser's rescission claim also requires the Court to "interpret the collective bargaining agreement to determine the scope of" the rights created by it. *Id.* at 1411. A court cannot discern what mistakes are "intrinsic" to the CBA without interpreting the CBA. As both parties' briefing illustrates, a tribunal considering Kaiser's rescission claim will need to not only interpret the disputed CBA terms but

---

[6] Kaiser also attributes a quotation to *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) that appears nowhere in that case. The fundamental observation from *Livadas* that "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . [is what] decides whether a state cause of action may go forward" is uncontroversial and undisputed. *Id.* at 123-24. The issue is that the legal character of Kaiser's rescission claim is not independent of the parties' CBA.

delve into the bargaining history at length. *See* UFCW MSJ 34-35; Kaiser Resp. 13-14. Kaiser asks the Court to not merely reference the CBA, but to parse its terms to determine which are intrinsic and then, if the Court agrees with Kaiser, to rewrite those terms. Such a claim cannot be said to be "independent" of the CBA.

The Supreme Court has made clear that "the pre-emptive effect of [Section] 301 must extend beyond suits alleging contract violations," to preempt suits under state law that "would frustrate the federal labor-contract scheme established in [Section] 301." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). Here, Kaiser wishes to leverage state law to modify the terms of the 2023 CBA. Such a claim is inextricably intertwined with the terms of that CBA and permitting it to go forward would frustrate fine-tuned labor management policies. Kaiser's claim for rescission is therefore preempted.

## CONCLUSION

For the reasons stated herein, UFCW's motion for summary judgment, ECF 23, is GRANTED, and Kaiser's motion for summary judgment, ECF 26, is DENIED. Kaiser's rescission claim is DISMISSED. The Court will enforce the arbitrator's Findings & Award, First Supplemental F&A, and Second Supplemental F&A. Within twenty-one (21) days of this Order, the parties shall confer and file a joint status report identifying any issues that remain to be decided; if the parties agree that there are no further issues to be decided before judgment is entered, UFCW shall prepare and file a proposed judgment and Kaiser will state any objections to the proposed judgment in the status report.

IT IS SO ORDERED.

DATED this 27th day of March, 2026.

Adrienne Nelson
United States District Judge